UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DOUGLAS M. S.,[1]

                Plaintiff,        **DECISION AND ORDER**

v.

                                                  6:20-cv-06712 (JJM)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

This is an action brought pursuant to 42 U.S.C. §405(g) to review the final determination of defendant Commissioner of Social Security that plaintiff was not entitled to disability insurance benefits ("DIB"). Before the court are the parties' cross-motions for judgment on the pleadings [15, 17].[2] The parties have consented to my jurisdiction [19]. Having reviewed their submissions [15, 17, 18], the plaintiff's motion is granted, and the Commissioner's motion is denied.

## BACKGROUND

The parties' familiarity with the 578-page administrative record [14] is presumed. The parties have comprehensively set forth in their papers the plaintiff's treatment history and the relevant medical evidence. Accordingly, I refer only to those facts necessary to explain my decision.

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination.

After plaintiff's claim was initially denied (Administrative Record [14] at 15, 71), an administrative hearing was held on September 14, 2017 before Administrative Law Judge ("ALJ") Michael Devlin. See id. at 49-70 (transcript of hearing). On December 20, 2017, ALJ Devlin issued a decision finding that plaintiff was not disabled. Id. at 84-93. The Appeals Council vacated the hearing decision and remanded the case to the ALJ due to inconsistencies in the testimony of the vocational expert and for further consideration of the plaintiff's residual functional capacity ("RFC"). Id. at 99-100. A second hearing was held on August 20, 2019 before ALJ Devlin, at which plaintiff and a vocational expert testified. Id. at 29-48. ALJ Devlin issued a second decision on September 26, 2019 finding that plaintiff was not disabled. Id. at 15-24. Thereafter, plaintiff initiated this action.

ALJ Devlin found that plaintiff's severe impairments were "congenital club feet status post-multiple remote surgeries including bilateral ankle fusion procedures; lumbar spine scoliosis and multi-level degenerative changes; obesity; history of seizure disorder; and migraine headaches". Id. at 18. ALJ Devlin considered, and rejected as severe impairments, plaintiff's diagnosed anxiety and depression, and urethral strictures. Id. Plaintiff challenges these determinations.[3] ALJ Devlin also determined that plaintiff had the RFC to perform less than the full range of sedentary work, with the following limitations:

> "He can occasionally lift and /or carry 10 pounds; frequently lift
> and/or carry less than 10 pounds; stand and/or walk up to two
> hours in an eight hour workday; sit about six hours in an eight hour
> workday; be allowed to use an assistive device (e.g. cane, etc.) to
> ambulate to and from a workstation; occasionally push and/or pull
> 10 pounds; occasionally climb ramps and/or stairs, balance, stoop,
> kneel, crouch, and crawl; never climb ladders/ropes/scaffolds;

---

[3]    ALJ Devlin also considered, but rejected for purposes of this step of the sequential evaluation, evidence of hypertension, sleep apnea, hip dysfunction, and right shoulder surgery. Administrative Record [14] at 18. Plaintiff does not challenge ALJ Devlin's findings concerning these non-severe impairments.

>  never work at unprotected heights or near moving machinery; and
>  be allowed to miss one day of work per month."

Id. at 20.

Plaintiff does not challenge the RFC as it relates to the conditions which ALJ Devlin found were severe. Instead, plaintiff argues that ALJ Devlin erred when he failed to find that his depression and anxiety, and urethral strictures were severe conditions, and that the error was not harmless because he failed to include limitations related to these conditions in his RFC. *See* Plaintiff's Memorandum of Law [15-1] at 1, 10-18. Specifically, plaintiff argues that remand is required because ALJ Devlin did not document his use of the "special technique" used to evaluate the effect of mental health impairments in the four broad areas of functioning. Id. at 10-13. Further, ALJ Devlin compounded his error when he failed to consider limitations associated with plaintiff's mental health conditions when crafting the RFC. Id. at 13-15. Finally, plaintiff argues that the ALJ erred by not incorporating off-task time into the RFC to accommodate bathroom breaks for the urinary frequency and urgency related to his urethral strictures, which lasted for greater than one year before plaintiff's condition improved through surgery. Id. at 15-18.

The Commissioner responds that ALJ Devlin's findings were supported by substantial evidence; that he properly applied the "special technique" required at step 2; that plaintiff failed to satisfy his burden to submit evidence supporting a more limited RFC; and that plaintiff's medical evidence demonstrates that his urinary issues were sufficiently managed during the relevant period and plaintiff's wide range of activities did not suggest any difficulty with urinary frequency and urgency. Commissioner's Brief [17-1] at 6-15.

The vocational expert testified that employers will tolerate "no more than 10% off-task time", and that "no more than three short, less than five-minute breaks in a day" would be tolerated, in addition to regularly-scheduled breaks. Id. at 46.

Based upon the RFC and the vocational expert's testimony, ALJ Devlin determined that plaintiff was "capable of performing past relevant work as an assembler". Id., p. 23. He therefore concluded that plaintiff was not disabled as defined in the Social Security Act. Id.

## ANALYSIS

A.   **Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938). It is well settled that an adjudicator determining a claim for DIB and/or SSI employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§ 404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. See Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

B.   **ALJ Devlin's Analysis of Plaintiff's Limitations Concerning Urethral Strictures is Not Supported by Substantial Evidence**

ALJ Devlin determined that plaintiff's urethral stricture was not a severe impairment. Administrative Record [14] at 18. He correctly noted that plaintiff's history with this condition "began in 2002, well before the period at issue". Id. He then discounted, without

analysis, the medical records documenting the stricture that recurred in or around May 2015 (id. at 378, 418) that resulted in surgery in October 2016 (id. at 399). "While the claimant's treatment with self-catheterization provided varied results through April 2016, he underwent successful urethroplasty surgery in October 2016." Id. After surgery, plaintiff's condition resolved. Id. at 18, 391 (2/7/2017 treatment note documenting "dramatic improvement in urinary symptoms").

Consultative examiner Carolyn Ling, M.D. examined plaintiff on May 27, 2015. At that time, plaintiff reported that "[h]e requires self catheterization two times a month and also has urgency and frequencies of up to every hour when he is awake". Id. at 368. As a result, Dr. Ling concluded in her medical source statement that plaintiff had a "moderate limitation from activities requiring traveling [f]or[4] work secondary to his urethral strictures with urinary frequency and urgency." Id. at 371. ALJ Devlin accorded Dr. Ling's opinion "little weight" because she "did not have access to the subsequent treatment record that reflects improvement in his symptoms". Id. at 18.

Medical evidence from plaintiff's treating providers confirms that plaintiff's symptoms recurred in May of 2015. He complained to his primary physician on June 1, 2015 of symptoms beginning a month prior, including diarrhea, bladder pressure, urgency, frequent urination, urinary straining, weight gain, and abdominal pain. Id. at 418 (June 1, 2015 treatment note). He reported to his urologist, John Cannon, M.D. a "high level of voiding" with "very slow urine flow" on June 24, 2015, lasting for "months or more". Id. at 378. Dr. Cannon dilated the stricture and inserted a foley catheter, which was to be in place for one week. Id. Plaintiff was

---

[4] As the Commissioner explained, "Dr. Ling's opinion includes what appears to be a typographical error, which the ALJ reasonably interpreted as 'traveling [f]or work'". Commissioner's Brief [17-1] at 14, n. 5. Plaintiff does not dispute the reasonableness of this interpretation.

not able to tolerate the catheter, however, and it was removed two days later. Id. (June 26, 2015 treatment note). Plaintiff was advised to self-catheterize daily for three months, then weekly for another five months. Id. He experienced an infection in early November 2015. Id. (November 3 and November 6, 2015 treatment notes). Approximately one week later, he went to the emergency room complaining of "dribbling of urine for 18 hours". Emergency room staff were unable to insert a catheter. Dr. Cannon "dilated a bulbomembraneous urethral stricture" and placed a catheter. Id. (November 14, 2015 treatment note). The catheter was removed on November 20, 2015. He was advised about urethroplasty and given another catheter with instructions to insert it twice weekly. Id. (November 20, 2015 treatment note).

At his office visit with Dr. Cannon on January 12, 2016, plaintiff reported passing the catheter weekly, and was advised to continue to do so. Id. (January 12, 2016 treatment note). By April 27, 2016, however, plaintiff reported "variable urine flow and the flow is less than it used to be". Id. at 377. Dr. Cannon could "not pass the region of his stricture" with a foley catheter, but was able to dilate the stricture and inserted a smaller catheter. Id. Dr. Cannon noted that plaintiff "was not found to be passing the catheter adequately for dilating the stricture and the stricture has recurred". Id. He opined that plaintiff "should be considered for a formal urethroplasty since he has not been successful in self-catheterization". Id. He was treated for another infection two days later after noticing blood in his urine. Id. (note of April 29, 2016 phone call).

Plaintiff was seen in the emergency room on July 22, 2016 with complaints that he was not able to empty his bladder and was able to urinate only small amounts. Id. at 394 (ED triage note). He returned to the emergency room again on August 10, 2016 with similar complaints. Id. (ED triage note).

Plaintiff saw Gareth J. W. Warren, M.D. for evaluation of his urethral stricture on August 12, 2016.  Id. at 381.  Dr. Warren administered the American Urological Association Symptom Index ("AUASI"), documenting plaintiff's symptoms.[5]  A score of 5 on the index indicates a symptom is "almost always" present and a score of 4 indicates a symptom is present "more than half the time".  The maximum score is 35.  Plaintiff scored 34, which indicates "severe" symptoms.  Plaintiff indicated that he "almost always" has to go again less than two hours after he finishes urinating and that it is "almost always" hard for him to wait when he has to urinate.  Id. at 382.  He reported that he typically has to urinate 5 times or more per night.  Id.  Dr. Warren scheduled placement of a suprapubic tube ("SPT") catheter[6] and ordered a retrograde urethrogram to assess the severity of plaintiff's stricture.  Id. at 385.  Both were performed on September 7, 2016.  Id. at 400-03.

After reviewing the results of the retrograde urethrogram, Dr. Warren diagnosed plaintiff with a "[s]tricture of the bulbous urethra" and scheduled surgery.  Id. at 389 (September 13, 2016 treatment note).  Plaintiff reported pain at the site of the SPT.  Id. at 387, 389.  Plaintiff went to the emergency room on October 5, 2016 after his SPT had been pulled out accidentally.  Id. at 394-98.  He underwent surgery on October 18, 2016 and was discharged with a foley catheter in place.  Id. at 399.  At his follow-up appointment with Dr. Warren on February 7, 2017, plaintiff reported "dramatic improvement" in his symptoms.  His score on the AUASI was 1 out of 35. Id. at 391.

---

[5] Questions and scoring for this assessment can be found at: https://healthy.kaiserpermanente.org/health-wellness/health-encyclopedia/he.american-urological-association-symptom-index.ug1952 (last accessed September 14, 2022).

[6] A suprapubic tube catheter refers to "placement of a drainage tube into the urinary bladder just above the pubic symphysis".  https://www.ncbi.nlm.nih.gov/books/NBK482179/ (last accessed September 13, 2022).

ALJ Devlin correctly stated that plaintiff's symptoms improved after surgery, using this fact as a reason to assign "little weight" to Dr. Ling's opinion. However, merely stating that plaintiff's condition improved, without discussion of the evidence suggesting limitations caused by the urinary stricture between May 2015 and February 2017, misstates the record. Dr. Cannon's and Dr. Warren's treatment notes documented significant symptoms that could have affected plaintiff's functional ability to work. They both recorded complaints of urinary frequency and urgency. Id. at 378, 382. The AUASI scores reported to Dr. Warren in August 2016 suggest plaintiff was using the bathroom on an urgent basis more frequently than every 2 hours. Id. at 382. Further, plaintiff's sleep was disrupted by his urinary symptoms. Id. He reported to Dr. Ling "urgency and frequencies of up to every hour". Id. at 368. Dr. Ling's functional assessment included a limitation on travel due to those symptoms present in May 2015 (id. at 371), and plaintiff's medical records suggest his symptoms worsened over time, leading to surgery, albeit with some respite due to catheterization. Id. at 377-78, 381-90, 394-98, 400-04. Cherry-picking evidence from the record to support a non-severity assessment, while ignoring evidence of symptoms "that would have a significant effect" on a plaintiff's ability to perform work-related functions, is an error. Lowe v. Colvin, 2016 WL 624922, *2 (W.D.N.Y. 2016). As ALJ Devlin acknowledged in his Decision, disability under the Social Security Act "is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical . . . impairment or combination of impairments . . . that has lasted . . . for a continuous period of not less than 12 months". Id. at 15; 42 U.S.C. §423(d)(1)(A). Here, plaintiff's medical evidence demonstrates that the stricture recurred sometime in May 2015 and did not resolve until plaintiff's October 2016 surgery, a period greater than 12 months.

"When considering a claim for benefits, if a claimant is disabled at any point in time, the ALJ should consider not only whether Plaintiff was disabled at the time of the hearing, but also whether Plaintiff was entitled to disability benefits for any closed, continuous period of not less than 12 months, following the date of his claim. . . . It is particularly necessary for the ALJ to consider whether a closed period of disability existed where the record shows that plaintiff's condition has improved significantly over time as the result of a discrete event, such as surgery". Robertson, II v. Berryhill, 2017 WL 3574626, *2 (W.D.N.Y. 2017) (internal quotations and citations omitted). Even where a plaintiff did not raise the issue of a closed period of disability prior to filing a motion for judgment on the pleadings, where, as here, "defendant has not claimed that plaintiff is precluded from making this argument, and instead argued the issue on the merits . . . the Court will address it". Id. (internal quotations omitted).

Accordingly, I find that ALJ Devlin erred by failing to find that plaintiff's urinary stricture was a severe impairment. An error at step 2 of the analysis is considered "harmless" and does not require remand where the omitted condition was "considered during the subsequent steps". Reices-Colon v. Astrue, 523 Fed. Appx. 796, 798 (2d Cir. 2013) (Summary Order); *see also* Lowe, 2016 WL 624922, *3 ("[a]n ALJ's failure to make an explicit finding of a step-two impairment where substantial evidence supports the presence thereof does not require remand unless the omitted impairment was not accounted for the in the ALJ's RFC determination") (internal citations omitted)). Here, there is no evidence in ALJ Devlin's decision that he considered any limitations related to plaintiff's urinary stricture, even for a closed period of time. However, the plaintiff's need for bathroom breaks to deal with his frequency and urgency issues, or to engage in care of his catheters, could have eroded the occupational base for sedentary work. Here, the vocational expert testified that an employer would tolerate "no more than three short,

less than five-minute" unscheduled breaks in a day in addition to regularly scheduled breaks. Administrative Record [14] at 46. Finally, given the vocational expert's testimony, the ALJ's analysis of this issue could be critical to the outcome of this claim.

Accordingly, this case is remanded for a proper analysis of the evidence of plaintiff's urinary stricture at step 2, for consideration of changes to plaintiff's RFC related to the urinary stricture, and for consideration of a closed period of disability, including further development of the record, if necessary, as to plaintiff's functional limitations with respect to the urinary stricture prior to surgery and/or for any period of recovery thereafter.

**C.     ALJ Devlin's RFC Analysis Must Consider Limitations Caused by Plaintiff's Depression and Anxiety**

Plaintiff argues that ALJ Devlin also erred by failing to perform adequate analysis of his depression and anxiety conditions at step 2 and when he developed plaintiff's RFC. Plaintiff's Memorandum of Law [15-1] at 10-15. Regardless of whether ALJ Devlin erred when he found plaintiff's depression and anxiety conditions "nonsevere" at step 2 of his analysis, I agree with plaintiff that ALJ Devlin erred when he failed to include any analysis of limitations caused by these conditions in his explanation of plaintiff's RFC:

> "[E]ven if this Court concluded that substantial evidence supports the ALJ's finding that Parker-Grose's mental impairment was nonsevere, it would still be necessary to remand this case for further consideration because the ALJ failed to account [for] Parker-Grose's mental limitations when determining her RFC. A RFC determination must account for limitations imposed by both severe and nonsevere impairments. *See* 20 C.F.R §404.1545(a)(2) . . . In this case, after finding that Parker-Grose's mental impairment of depression does not cause more than minimal limitation in her ability to perform basic mental work activities and is therefore nonsevere, . . . the ALJ determined Parker-Grose's RFC without accounting for any of the limitations arising from her mental impairment that were established by substantial evidence in the record. Thus, the ALJ committed legal error."

Parker-Grose v. Astrue, 462 Fed. Appx. 16, 18 (2d Cir. 2012) (Summary Order) (internal quotations omitted).

Here, the same analysis applies. ALJ Devlin did not specifically discuss how his RFC addressed plaintiff's limitations, even if mild, related to his depression and anxiety conditions. I therefore cannot determine whether or how he intended for the RFC to address them. Accordingly, while the RFC *may* have accounted for these limitations, ALJ Devlin has not explained how. The Commissioner's *post-hoc* rationalizations of the ALJ's failure to include additional limitations in the RFC "cannot serve as a substitute for the ALJ's findings". White v. Saul, 414 F.Supp.3d 377, 385 (W.D.N.Y. 2019). Because ALJ Devlin failed to properly assess whether plaintiff's mental conditions caused functional impairments that affected his RFC, remand is required.

## CONCLUSION

For the reasons stated above, plaintiff's motion for judgment on the pleadings [15] is granted and this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order. Accordingly, the Commissioner's motion for judgment on the pleadings [17] is denied.

**SO ORDERED**.

Dated: September 27, 2022

/s/ _____
JEREMIAH J. MCCARTHY
United States Magistrate Judge